UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ENEMIGO LTD.,

              Plaintiff,

      - against –

TRINITY BEVERAGE GROUP, LLC,
MICHAEL BELL, HILL FLYNN,
JURETA CAPITAL PARTNERS LLC,
VERITY WINES, LLC, ORACLES
CAPITAL, INC., ORACLES IMPORTS,
LLC d/b/a ORACLES CRAFT BRANDS,
KATHRYN SELBY, SELBY NEW YORK,
INC.,

            Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 9794 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    Enemigo Ltd. ("Enemigo" or "plaintiff"), a United Kingdom-based tequila company, filed this lawsuit on November 18, 2022 against defendants Michael Bell, Hill Flynn, Trinity Beverage Group, LLC ("Trinity"), Jureta Capital Partners LLC ("Jureta"), Verity Wines, LLC ("Verity"), and Oracles Capital, Inc. ("Oracles").  ECF No. 2.  On July 2, 2023, plaintiff filed an amended complaint adding three defendants -- Oracles Imports, LLC d/b/a Oracles Craft ("Oracles Craft"), Kathryn Selby, and Selby New York, Inc. -- among other allegations.  ECF No. 57 ("First Amended Complaint" or "FAC").  Plaintiff asserts claims of (1) fraud against all defendants; (2) breach of contract against Verity

and Trinity; (3) unjust enrichment against all defendants; (4) declaratory judgment against Jureta, Verity, and Trinity; (5) conversion against Trinity and Oracles Craft; (6) civil conspiracy against Bell, Selby, and Selby NY; and (7) alter ego liability against all defendants. FAC ¶¶ 78-142. Presently before the Court is defendants' motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the citizenship of Jureta and Verity. ECF Nos. 95, 96 ("Mot."). For the following reasons, defendants' motion is denied.

## BACKGROUND[1]

### A.   Factual Background

This case arises out of a series of supply agreements the parties entered into guaranteeing defendants' importation and distribution of plaintiff's tequila, and corresponding investments plaintiff made in defendant entities. On July 24, 2020, Enemigo invested $500,000 in Jureta, a company wholly-owned by defendants

---

[1] The following facts are drawn from the First Amended Complaint, documents incorporated by reference in the First Amended Complaint, possessed and relied upon by plaintiff in bringing suit, or of which the Court may take judicial notice. "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings," such as documents attached to defendants' motion to dismiss and to plaintiff's opposition. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); accord Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 499 (S.D.N.Y. 2016).

Flynn and Bell, FAC ¶ 2; ECF No. 65 ¶ 2, through the issuance of a convertible note that converted into equity upon a maturity date of December 31, 2020.[2]   Opp. at 3; ECF No. 103 ("Decl. of Goldenberg"), Ex. 1 (the "Jureta Note").   That same day, Enemigo entered into an exclusive supply agreement with Verity (the "Verity Agreement") -- an entity in which Jureta held an 80 percent ownership stake.   FAC ¶¶ 2, 23; ECF No. 81-1.   Under this agreement, Verity was required to purchase approximately $554,000 worth of Enemigo's tequila.   FAC ¶ 87; Opp. at 4; Decl. of Goldenberg, Ex. 2.

Plaintiff alleges that within several months of entering into the Verity Agreement, Verity began defaulting on its debt obligations.   FAC ¶¶ 25-27.   Around that time, Bell formed a new entity, Trinity, which acquired Verity and its assets in a foreclosure sale under Article 9 of the Uniform Commercial Code. Id.   Bell and Flynn served as Trinity's Chairman and CEO, respectively, and the sole member of Trinity was Oracles, an entity allegedly owned by Bell.   Id. ¶¶ 27, 61.

In approximately June 2021, Enemigo notified defendants that they owed $123,205 in outstanding payables pursuant to the Verity

---

[2] However, upon the occurrence of certain events of default as defined in the Jureta Note, all principal and interest would become due immediately.   Opp. at 3.

Agreement.  Id. ¶ 28; see also Decl. of Goldenberg, Ex. 3 at 5. In lieu of payment, Flynn and Bell proposed that plaintiff enter into a separate supply agreement with, and invest the outstanding debt plus an additional $126,795 through the issuance of a convertible note in, the newly formed Trinity.  FAC ¶ 29; Decl. of Goldenberg, Ex. 3.   Flynn and Bell premised the new supply agreement on a "master distribution agreement" allegedly being finalized between Trinity and the "largest wine [and] spirit distributor" in the United States, Southern Glazer's Wine and Spirits, LLC ("SGWS").  FAC ¶¶ 6, 29-33, 61.  Of note, Flynn and Bell represented (1) that their agreement with SGWS would enable Trinity to purchase a minimum of $1,175,000 of Enemigo's product in the first year, id. ¶ 94; Opp. at 6; see also Decl. of Goldenberg, Ex. 3, (2) that plaintiff's tequila would be given "significant priority in Trinity's product line," Opp. at 5, and (3) that SGWS wanted to take an equity stake in Trinity, which in turn would increase the value of plaintiff's eventual equity stake in Trinity obtained through the second convertible note, id. Following some back and forth in which plaintiff expressed concerns about payment issues under the Verity Agreement and the status of the Jureta Note, plaintiff signed the new supply agreement (the "Trinity Agreement").  FAC ¶¶ 37-43; Decl. of Goldenberg, Ex. 3.

In September 2021, Flynn informed plaintiff that the SGWS agreement had been executed and emailed plaintiff a purported copy of the signed agreement.  FAC ¶ 60.

In March 2022, after months of delays in sales of Enemigo's tequila, Trinity informed Enemigo that SGWS had backed out of the master distribution deal.  Id. ¶ 67.  Plaintiff alleges that Trinity had purchased only $229,224 worth of its tequila -- nearly $1 million less than the guaranteed minimum set forth in the Trinity Agreement.  Id. ¶¶ 70, 94.  On October 24, 2022, Bell admitted to plaintiff in writing that the SGWS contract had never been executed and that Flynn likely had forged SGWS's signature. Id. ¶ 71.  Plaintiff demanded the immediate return of its investments, money owed from lost sales guaranteed under the supply agreements, and tequila inventory.  Id. ¶ 73; Opp. at 10-11.  On November 8, 2022, Flynn responded by accusing Bell of "orchestrat[ing] the Article 9 foreclosure that wiped out [Enemigo's] investment" and "conspir[ing] with the senior secured lender . . . to bankrupt Verity Wine Partners, then transfer assets to the new entity [Trinity]."  Id. ¶ 74; Decl. of Goldenberg, Ex. 13.  On November 18, 2022, plaintiff filed this lawsuit.

In the First Amended Complaint, plaintiff alleges that, after the filing of the original complaint, Bell formed another entity,

Oracles, "for the purpose of having Trinity merge into it, thereby destroying Enemigo's $250,000 investment in Trinity, and depriving Enemigo of its tequila" being stored in undisclosed warehouses. Id. ¶ 77.

### B. Procedural History

Plaintiff filed its original complaint on November 18, 2022. On June 2, 2023, plaintiff moved to file an amended complaint asserting claims against three additional defendants. ECF No. 54. After defendants did not oppose, the Court granted plaintiff's motion and plaintiff filed its amended complaint on July 2, 2023. ECF Nos. 56, 57.

On July 27, 2023, over eight months after the filing of the original complaint, defendants raised for the first time in a letter seeking permission to file a motion to dismiss a potential jurisdictional defect based on plaintiff's alleged membership in defendant Jureta. ECF No. 73. On September 14, 2023, the Court granted defendants permission to file their proposed motion to dismiss for lack of subject matter jurisdiction. ECF No. 82. The Court also directed defendants to confirm by affidavit the citizenship of the entity defendants and their members. Id.; ECF Nos. 88-90. On September 27, 2023, October 3, 2023, and October

10, 2023, Bell submitted affidavits specifying the citizenship of Oracles, Oracles Craft, Trinity, and Verity.[3]  ECF Nos. 88-90.

On November 21, 2023, defendants filed their motion to dismiss the First Amended Complaint for lack of subject matter jurisdiction.  ECF Nos. 95, 96.  On January 15, 2024, plaintiff filed its opposition, ECF No. 101 ("Opp."), and on January 31, 2024, defendants filed their reply, ECF No. 104 ("Reply").  On March 5, 2024, the Court granted plaintiff leave to file a supplemental memorandum of law in opposition to defendants' motion in light of certain facts that had emerged following the deposition of Flynn.  ECF Nos. 105, 107.  Plaintiff filed its supplemental brief on March 15, 2024, ECF No. 109 ("Supp. Opp."), and on April 2, 2024, defendants filed a supplemental reply, ECF No. 116.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and may not entertain matters over which they do not have subject matter jurisdiction.  <u>Wynn v. AC Rochester</u>, 273 F.3d 153, 157 (2d Cir. 2001).  A plaintiff invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) must allege facts sufficient to establish that all plaintiffs possess state citizenship diverse from all defendants, and that the amount in controversy exceeds $75,000.

---

[3] No affidavit was filed confirming the citizenship of Jureta.

28 U.S.C. § 1332(a); Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553-54 (2005).   "[D]iversity jurisdiction exists over civil actions (1) between 'citizens of different States' and (2) between 'citizens of a State and citizens or subjects of a foreign state.'"   Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (quoting 28 U.S.C. § 1332).   For diversity purposes, a limited liability company ("LLC") "takes the citizenship of each of its members."   Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."   Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).   In resolving a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs."   J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).   "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings," such as affidavits and exhibits.   Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and citation omitted); see also SM Kids, LLC v.

Google LLC, 963 F.3d 206, 210 (2d Cir. 2020). However, the court "may not rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S., 386 F.3d at 110.

### DISCUSSION

Enemigo, a citizen of the United Kingdom, alleges that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship. FAC ¶ 18. Specifically, plaintiff asserts the following: (1) Trinity is a Delaware LLC with its principal place of business in New York and has one member that is a Delaware corporation with its principal place of business in Florida; (2) Oracles is a Delaware corporation with its principal place of business in Florida; (3) Bell, Flynn, and Selby are New York residents; (4) Jureta is a Delaware LLC with its principal place of business in New York and has two members who are residents of New York; (5) Verity is a New York LLC with its principal place of business in New York and has two members who are residents of New York; (6) Oracles Craft is a Delaware LLC with its principal place of business in New York and whose manager and CEO is Bell; and (7) Selby New York, Inc. is a Florida corporation doing business in New York. Id. ¶¶ 10-16.

Defendants move to dismiss the entire action, arguing that (1) plaintiff failed to plead the citizenship of the LLC defendants

(Oracles Craft, Verity, Trinity, and Jureta); and (2) complete diversity does not exist because plaintiff is a member of Verity and Jureta, making plaintiff and two defendants citizens of the United Kingdom.  Mot. at 1.  Plaintiff maintains, among other things, (1) that the Court should dismiss Jureta as a dispensable party pursuant to Federal Rule of Civil Procedure 21; (2) that plaintiff is not a member of Verity because Trinity acquired all of Verity's assets before this complaint was filed; and (3) that any alleged failure to plead citizenship is moot because defendants submitted affidavits confirming the citizenships of the LLC defendants and showing that complete diversity exists.[4]  Opp. at 14-18, 22-24.  We will address each in turn.[5]

### A.  Dismissal of Jureta Pursuant to Federal Rule of Civil Procedure 21

#### 1. Applicable Law

We first address whether Jureta, a party defendants allege is nondiverse, should be dismissed from the case pursuant to Rule 21 to preserve diversity jurisdiction.  "Federal Rule of Civil

---

[4] Plaintiff disputes the affidavit submitted on behalf of Verity, ECF No. 90, which states that Verity is a citizen of the United Kingdom.  Opp. at 24 n.6.

[5] Plaintiff also argues that dismissal for lack of subject matter jurisdiction is premature because the jurisdictional issue is intertwined with the merits of the case; that Jureta's citizenship for diversity purposes must be disregarded because Jureta is a nominal party and not a real party in interest; and that any membership interest Enemigo held in Jureta was extinguished by Jureta's dissolution that occurred before the commencement of this lawsuit.  However, for the reasons stated below, the Court need not reach these arguments.

Procedure 21 allows a court to drop a nondiverse party at any time
to preserve diversity jurisdiction, . . . provided the nondiverse
party is not 'indispensable' under Rule 19(b)."  <u>CP Sols. PTE,</u>
<u>Ltd. v. Gen. Elec. Co.</u>, 553 F.3d 156, 159 (2d Cir. 2009) (citation
omitted).  In determining whether a party is indispensable, courts
should consider the four factors specified in Rule 19(b):

> (1) whether a judgment rendered in a person's absence
> might prejudice that person or parties to the action,
> (2) the extent to which any prejudice could be
> alleviated, (3) whether a judgment in the person's
> absence would be adequate, and (4) whether the plaintiff
> would have an adequate remedy if the court dismissed the
> suit.

<u>Id.</u>

The Second Circuit has held that a "district court should
take a 'flexible approach' under Rule 19(b) when deciding whether
parties are indispensable and that 'very few cases should be
terminated due to the absence of nondiverse parties unless there
has been a reasoned determination that their nonjoinder makes just
resolution of the action impossible.'"  <u>Universal Reinsurance Co.</u>
<u>v. St. Paul Fire & Marine Ins. Co.</u>, 312 F.3d 82, 87 (2d Cir. 2002)
(internal citation omitted).  Relatedly, the Circuit "disfavors
per se rules of indispensability, instead directing district
courts to make a fact-specific assessment of a party's importance
to an action 'in the context of a particular litigation.'"  <u>Tutor</u>

Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC, 525 F. Supp. 3d 482, 497 (S.D.N.Y. 2021) (quoting Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 90 (2d Cir. 1990)); see, e.g., CP Sols. PTE, Ltd., 553 F.3d at 159 (reversing a district court's dismissal for lack of diversity where it "adopted a bright-line rule that all parties to a contract are indispensable"). "District courts are afforded substantial discretion in weighing the Rule 19(b) factors and in determining how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." Walker v. City of Waterbury, 253 F. Appx. 58, 62 (2d Cir. 2007) (internal quotation marks and citation omitted). "The decision whether to dismiss an action for failure to join an indispensable party is . . . more in the arena of a factual determination than a legal one." Id.

### 2. Application

As noted above, the predicate for defendants' lack of diversity argument is the assertion that plaintiff is member of Jureta. While plaintiff adamantly disputes that the Jureta Note converted to a membership interest, see supra 10 n.5, Opp. at 18-21, plaintiff's bottom line position is that this dispute is irrelevant since Jureta is a dispensable party that should be

dismissed pursuant to Rule 21.  Defendants fail to articulate any
persuasive reason as to why Jureta should be considered an
indispensable party.  Instead, they offer a single argument that
has been squarely rejected by the Second Circuit, see CP Sols.
PTE, Ltd., 553 F.3d at 159, namely, that Jureta is a "necessary
and indispensable party" because it was "a counterparty to one of
the promissory notes referenced" in the First Amended Complaint,
Reply at 2.

Applying the Rule 19(b) factors to this case, the Court finds
that little, if any, prejudice would result if this action were to
proceed without Jureta.  First, Jureta itself is unlikely to be
prejudiced, as, according to the Delaware Department of State's
Division of Corporations website, Jureta has been dissolved since
at least June 2023.[6]  Decl. of Goldenberg, Ex. 15.  Moreover, in
his deposition, Flynn -- one of Jureta's owners -- testified that
Jureta has been inactive and non-operational since at least June

---

[6] According to the Delaware Department of State's Division of Corporations
website, Jureta's entity status is "Cancelled."  Decl. of Goldenberg, Ex. 15.
The same website defines "Cancelled" as an entity for which "[a] certificate of
Cancellation has been voluntarily filed by the entity to terminate its
existence."  Delaware Department of State: Division of Corporations, Field
Definitions,
https://icis.corp.delaware.gov/ecorp/FieldDesc.aspx#:~:text=They%20are%20defi
ned%20as%20such,entity%20to%20terminate%20its%20existence.  The definition
also notes that this certificate "is filed when an entity has dissolved and at
the completion of winding up the entity."  Id.

2021, Supp. Opp. at 2 (citing ECF No. 109-1 at 336:19-338:3).[7]  In addition, over eighteen months have passed since the filing of the original complaint, and Jureta has failed to appear in this case, despite the presence of its two owners.[8]  Given the defunct status of Jureta, it is unlikely that plaintiff "would be eager for the chance to procure blood from a stone."  CP Sols. PTE, Ltd., 553 F.3d at 160; Opp. at 16 ("Enemigo's focus is on Jureta's alter egos (Bell and Flynn), and the various shell entities Defendants formed to roll up Jureta's assets into other corporate entities.").  Accordingly, Jureta has no interests that would be impeded if the litigation proceeds in its absence.

Similarly, defendants have offered no argument, and the Court cannot identify one, as to why the dismissal of Jureta would cause them any prejudice.  First, Jureta has been asset-less since June 2021 according to Flynn's testimony and has been dissolved since at least June 2023.  See supra 13.  "[T]his court must apply Rule 19(b) with the flexibility of equity," and while Jureta may have been a party to one of the convertible notes at issue in this

---

[7] It is worth noting that Flynn also testified that Jureta was formed as a "vehicle for [Flynn's] ownership stake" in Verity and that it never generated any profits or losses.  ECF No. 109-1 at 101:24-102:12, 111:17-25.

[8] Service for Jureta was "effectuated" on the Delaware Secretary of State on December 5, 2022.  ECF No. 7.  However on December 8, 2022 a notice was mailed to plaintiff informing it that Jureta's registered agent had "refused delivery" of the complaint.  ECF No. 75-1.

lawsuit, it "would be to exalt form over substance and frustrate the intent of Rule 19" to dismiss this action based on the presence of a dissolved LLC whose members remain parties to the lawsuit. Whitney v. Citibank, N.A., No. 81 Civ. 5832 (CBM), 1985 WL 566, at *6 (S.D.N.Y. Apr. 19, 1985).

Second, the First Amended Complaint does not attribute any action only to Jureta, suggesting that Jureta's actions were not "the sole or primary cause of [plaintiff's] damages." CP Sols. PTE, Ltd., 553 F.3d at 159. The other defendants are thus unlikely to be held accountable for wrongdoing by Jureta. Moreover, plaintiff offered to amend the First Amended Complaint to remove any allegations against Jureta, which would ensure that the remaining defendants would be subject only to liability based on their own actions. Opp. at 16, n. 5. As for the second Rule 19(b) factor, the Court need not consider the extent to which any prejudice could be mitigated because the dismissal of Jureta would cause little to no prejudice to defendants.

Third, the adequacy of any judgment would not be jeopardized by the absence of Jureta. "[A]dequacy refers to the 'public stake in settling disputes by wholes, whenever possible.'" Republic of Philippines v. Pimentel, 553 U.S. 851, 870 (2008) (citation omitted). This factor thus concerns the "social interest in the

efficient administration of justice and the avoidance of multiple litigation." Id. (internal quotation marks and citation omitted).

Considering the "procedural posture in which this case comes to us," Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 180 (2d Cir. 2007), it would hardly serve the efficient administration of justice to require the parties to start over in state court simply because an asset-less, dissolved company cannot be joined in federal court.  Plaintiff filed this case over eighteen months ago and the parties have engaged in extensive discovery during that time, including the depositions of at least two defendants, among others.  See, e.g., ECF Nos. 94, 121.  The parties are scheduled to complete fact discovery by August 14, 2024.  ECF No. 121.  Because the jurisdictional defect can be salvaged without prejudice to Jureta or the other defendants, "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 836 (1989).

Finally, because Oracles is incorporated in Delaware with its principal place of business in Florida, while the other defendants could be sued in New York, it does not appear that there is a single state in which all defendants could be sued.  Accordingly,

it appears that plaintiff would not have an adequate remedy if this action were dismissed.[9]  Fed. R. Civ. P. 19(b)(4).

**B.  Citizenship of _Verity_**

Defendants also contend that complete diversity does not exist because Enemigo is a member of Verity by way of its membership in Jureta, which owned 80 percent of Verity as of February 6, 2020.  Mot. at 7-8; _see also_ ECF No. 81-1.  Plaintiff counters that the transfer of Verity to Trinity in 2021 "evaporated" any ownership interest Enemigo might have held in Verity based on its alleged membership in Jureta.  Opp. at 22; FAC ¶ 27.  The Court agrees.

Plaintiff alleges that Verity merged with Trinity in 2021 through a foreclosure sale, FAC ¶ 27; _see also_ Opp. at 22, which defendants do not dispute, _see_ Reply at 2-5.  Accepting this factual allegation as true, Jureta's ownership interest in Verity ceased well before the filing of the original complaint on November 18, 2022.

Moreover, plaintiff's position is supported by the record. On June 24, 2021, Bell sent an email to the founder and managing

---

[9] Even if plaintiff could sue all defendants in a state court, that consideration is far outweighed by the unfairness to plaintiff and the harm to judicial economy.  "[W]hen federal diversity jurisdiction will exist if nondiverse parties are dropped, the bare fact that a state court forum is available does not, by itself, make it appropriate to dismiss the federal action." _CP Sols. PTE, Ltd._, 553 F.3d at 161 (internal quotation marks and citation omitted).

director of Enemigo, ECF No. 102 ¶ 2, clarifying that "Jureta[']s ownership has gone from nearly 100% of the equity (under $47M of liabilities) in Verity Wines, LLC to 0% today," ECF No. 103-3 at 5.  And on November 8, 2022, Flynn sent an email to plaintiff's counsel stating that Bell had "conspired . . . [to] transfer [Verity's] assets to the new entity Trinity."  FAC ¶ 74; Decl. of Goldenberg, Ex. 13 at 1.

Having considered plaintiff's undisputed allegations, as well as the evidence on the record, the Court concludes that Jureta was not a member of Verity at the time the original complaint was filed and therefore plaintiff could not have been a member of Verity based on its alleged membership in Jureta.  See LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001) (for the purpose of assessing diversity jurisdiction, citizenship is measured at the time the original complaint was filed).  Accordingly, the presence of Verity in this lawsuit does not destroy subject matter jurisdiction.

### C.  Plaintiff's Jurisdictional Pleadings

Finally, we will address defendants' motion to dismiss based on plaintiff's failure to properly plead the citizenship of the LLC defendants' members.  Mot. at 4-7.

"[A] plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter jurisdiction."  Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 64 (2d Cir. 2009).  While defendants may be correct that plaintiff's allegations do not establish the existence of complete diversity, the failure to do so "does not always require that the action be dismissed, for 'the actual existence of diversity jurisdiction, ab initio, does not depend on the complaint's compliance with these procedural requirements.'"  Id.  (quoting Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 568 (2d Cir. 2000)) (emphasis in original).  Accordingly, "where the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may simply allow a complaint to be amended to assert those necessary facts."  Herrick Co., Inc., 251 F.3d at 329; 28 U.S.C. § 1653 ("[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts").

Alternatively, "when the record as a whole . . . establishes the existence of the requisite diversity of citizenship between the parties, [the court] may simply 'deem the pleadings amended so as to properly allege diversity jurisdiction.'"  Durant, Nichols,

-19-

Houston, Hodgson & Cortese-Costa P.C., 565 F.3d at 64 (citing
Canedy v. Liberty Mutual Insurance Co., 126 F.3d 100, 103 (2d Cir.
1997), which found that diversity had been established where
affidavits submitted to the court were uncontested by either party
and nothing in the record suggested a lack of jurisdiction); see
also Jacobs, 230 F.3d at 567-68 (upholding default judgment
notwithstanding the complaint's failure to allege the parties'
citizenship where the supplemented record revealed diversity of
citizenship).

Here, defendants have submitted affidavits concerning the
citizenship of Oracles Craft and Trinity, which confirm that
Oracles Craft is a citizen of Florida and that Trinity is a citizen
of Delaware, New York, Florida, California, and Connecticut.  ECF
Nos. 88, 89.  Because plaintiff does not dispute these assertions,
and nothing in the record contradicts them, the Court regards the
record as sufficient to establish that complete diversity exists
between plaintiff and defendants Oracles Craft and Trinity.

As for Jureta and Verity, while not necessary for plaintiff
to amend its complaint given the Court's determination that Jureta
can be dismissed as a dispensable party and that Enemigo was not
a member of Verity at the time of the filing of the original

complaint, plaintiff is directed to amend its complaint consistent with this Memorandum and Order.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.  Plaintiff is directed to file an amended complaint in accordance with, and within ten days of, this Memorandum and Order.  The Clerk of the Court is respectfully directed to close the motion pending at ECF No. 95.


**SO ORDERED.**


Dated:     June 24, 2024
           New York, New York

_____
       NAOMI REICE BUCHWALD
    UNITED STATES DISTRICT JUDGE