UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

ENEMIGO LTD.,

                    Plaintiff,

        - against –                                **MEMORANDUM AND ORDER**

TRINITY  BEVERAGE  GROUP,  LLC,                    22 Civ. 9794 (NRB)
MICHAEL BELL, HILL FLYNN, VERITY
WINES,  LLC,  ORACLES  CAPITAL,
INC., ORACLES IMPORTS, LLC d/b/a
ORACLES  CRAFT  BRANDS,  KATHRYN
SELBY, and SELBY NEW YORK, INC.,

                    Defendants.

-------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Plaintiff Enemigo Ltd. ("Enemigo" or "plaintiff"), a United

Kingdom-based tequila company, filed this lawsuit on November 18,

2022 against individual defendants Michael Bell and Hill Flynn,

along with various entities they own or control, namely: Trinity

Beverage  Group,  LLC  ("Trinity"),  Jureta  Capital  Partners  LLC

("Jureta"), Verity Wines, LLC ("Verity"), and Oracles Capital,

Inc. ("Oracles").  ECF No. 2.  On July 2, 2023, plaintiff filed an

amended  complaint  asserting  claims  against  three  additional

defendants: (i) Oracles Imports LLC d/b/a Oracles Craft Brands

("Oracles Craft"), a Delaware limited liability company also

managed by Bell; (ii) Kathryn Selby, Bell's wife ("Selby"); and

(iii) Selby New York, Inc. ("Selby NY"), a Florida corporation of

-1-

which Selby is the current CEO (together with Selby, the "Selby defendants"). ECF No. 57 ¶¶ 10-16. Approximately one year later, on July 3, 2024, plaintiff filed a second amended complaint in which Jureta was removed as a defendant. ECF No. 124, Second Amended Complaint ("SAC").[1]

Presently before the Court is the Selby defendants' motion to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 149-2 ("Mot."). For the reasons discussed herein, the Selby defendants' motion is granted.

## BACKGROUND

The facts of this case have been described in detail in this Court's prior decision. See Enemigo Ltd. v. Trinity Beverage Grp., LLC, et al., No. 22 Civ. 9794 (NRB), 2024 WL 3104803 (S.D.N.Y. June 24, 2024). Accordingly, we assume the reader's familiarity with the history of this litigation and provide only the background relevant for resolution of the instant motion.

## I.    Factual Background[2]

This case arises out of a series of investments and agreements executed between the parties in 2020 and 2021, in connection with

---

[1]    The First and Second Amended Complaints also named as defendants John and Jane Does #1-99, described as "persons and entities, the names of which are presently unknown to Enemigo, who participated in the wrongful conduct alleged in this Complaint. ECF No. 57 ¶ 17; SAC ¶ 16.

[2]    Unless otherwise noted, the facts considered and recited herein are drawn from plaintiff's Second Amended Complaint. See SAC. For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences

the planned importation and distribution of plaintiffs' tequila in the United States.

The conduct relevant to plaintiff's claims against the Selby defendants is related to an agreement executed between Enemigo and Trinity on July 27, 2021 (the "Trinity Supplier Agreement"). Pursuant to this agreement, Trinity was obligated to purchase a minimum of "4,850 cases of Enemigo's 86 Anejo Cristalino tequila, and 1,250 cases of Enemigo's 00 Extra Anejo tequila" between July 2021 and August 2022. SAC ¶¶ 41-42. Plaintiff alleges that Trinity failed to fulfill its obligations under this contract, purchasing only a fraction of the tequila it had agreed to acquire. Id. ¶ 93.

The Trinity Supplier Agreement also required Trinity to provide marketing services to Enemigo, including "distribution price support, social media, point-of-sales material including flutes, trade digital advertising (i.e. SevenFifty marketplace ads), spirits competition entry, [and] public relations support[.]" Id. ¶ 42. Bell, the Chief Executive Officer of Trinity, informed Enemigo that Trinity intended to use an outside public relations and marketing firm, Selby NY, to market Enemigo's

---

in plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

-3-

tequila.  Id. ¶ 44.[3]  He did not, however, inform Enemigo that Selby NY was owned by his wife, Selby.  Id.

Enemigo requested additional information from Bell regarding Selby NY, including information related to the company's experience marketing alcoholic and beverage brands, examples of content the company had created for similar brands, and "monthly expectations[.]"  Id. ¶¶ 45-47.  Bell responded to these requests by advising that additional information regarding Selby NY would be provided by another Trinity employee, who then introduced Enemigo to Selby.  Id. ¶ 48.

On July 28, 2021, one day after the parties executed the Trinity Supplier Agreement, Selby wrote to Enemigo and provided responses to some of its inquiries, advising that Selby NY managed ASM Whiskey, a brand wholly owned at the time by Oracles, and expected to take over management of Trinity's social media accounts.  Id. ¶ 49.

Enemigo then asked Selby to provide specific examples of content created for other brands and to prepare a proposal for long-stemmed flute glasses that could be used in Enemigo's

---

[3]    Note the SAC appears to provide contradictory information regarding the timeline for these discussions.  The SAC states that Enemigo was not aware that Trinity intended to use Selby NY for marketing services until "[i]mmediately after executing the Trinity Supplier Agreement[.]"  SAC ¶¶ 43-45.  However, the SAC also cites emails sent on July 19, July 21, and July 22, 2021, before the Trinity Supply Agreement was executed, in which Enemigo and Bell discussed Trinity's planned use of Selby NY for marketing services.  Id. ¶¶ 46-48.

promotional material.  Id. ¶ 50.  Selby responded with flute glass options and provided a mailing she had created for a candy company. Id.  Following this exchange, neither Selby nor Selby NY performed any marketing services for Enemigo.  Id. ¶ 51.  Approximately two months later, on September 27, 2021, plaintiff invested an additional $250,000 in Trinity through the issuance of a convertible note (the "Trinity Note").  Id. ¶ 62.

On October 27, 2022, following more than one year of underperformance and the discovery of various false representations made by Bell and Flynn, Enemigo requested that Trinity return its investments and any damages in the form of lost sales, as well as all existing tequila inventory.  Id. ¶ 72. Enemigo also demanded that Trinity stop any and all marketing activities and uses of Enemigo's intellectual property.  Id.

## II.  Procedural History

Plaintiff filed suit on November 18, 2022, see ECF No. 2, and filed its first amended complaint on July 2, 2023, see ECF No. 57. On November 21, 2023, defendants moved to dismiss the complaint for lack of subject matter jurisdiction due to a lack of diversity among the parties.  See ECF Nos. 95-97.  Plaintiff opposed the motion, ECF Nos. 101-03, and it was fully briefed on April 2, 2024, ECF Nos. 109, 116.  On June 24, 2024, the Court issued a Memorandum and Order denying defendants' motion.  See Enemigo Ltd., 2024 WL

-5-

3104803.  However, the Court determined that Jureta could be dismissed as a dispensable party and directed plaintiff to amend its complaint consistent with the Court's order.  Id. at *8.

Plaintiff did so, filing a Second Amended Complaint on July 3, 2024 asserting the following claims: (1) fraud against all defendants; (2) breach of contract against Verity and Trinity; (3) unjust enrichment against all defendants; (4) declaratory judgment against Verity and Trinity; (5) conversion against Trinity and Oracles Craft; (6) civil conspiracy against Bell, Selby, and Selby NY; and (7) alter ego liability against Bell and Flynn as executives, owners, and/or indirect owners of Jureta, Verity, Oracles, Trinity, and Selby NY.  SAC ¶¶ 77-141.  Defendant Flynn subsequently filed an Answer asserting cross-claims against all co-defendants, including the Selby defendants, for common law and contractual indemnification, as well as contribution.  ECF No. 135 at 27-28.

The Selby defendants filed a letter regarding a proposed motion to dismiss the claims against them on July 11, 2024.  See ECF No. 126.  Plaintiff filed a letter in opposition on July 16, 2024, ECF No. 129, and the Court granted the Selby defendants' request to file a motion to dismiss without holding a pre-motion conference, ECF No. 142.

The Selby defendants filed their motion to dismiss on September 30, 2024, see Mot., with an accompanying declaration by their counsel, see ECF No. 149-3. Plaintiff filed its opposition on October 30, 2024, ECF No. 154 ("Opp."), with an accompanying declaration by plaintiff's counsel, ECF Nos. 155-56, and the motion was fully briefed on December 9, 2024, ECF No. 162 ("Reply").

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [pleaded] fact[s] . . . allow[] the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." Id. A court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor[.]" Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

## DISCUSSION

Plaintiff asserts the following claims against the Selby defendants: (i) fraud; (ii) civil conspiracy; (iii) unjust enrichment; and (iv) alter ego liability. SAC ¶¶ 77-141. The Selby defendants seek dismissal of all four claims under Fed. R. Civ. P. 12(b)(6). The Selby defendants also seek dismissal of the cross-claims against them. See supra at 6 (citing ECF No. 135). We address each argument in turn.

### I.    Fraud

First, defendant contends that plaintiff has failed to plead the elements of a claim for common law fraud, noting that the SAC does not identify any misrepresentation or material omission made by either of the Selby defendants. Mot. at 10.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the defendant reasonably relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015) (citing Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006); Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (per curiam)).

In alleging fraud, a party must "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Accordingly, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations." DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)). Moreover, where, as here, multiple parties are alleged to have participated in the fraud, the Court must evaluate plaintiff's allegations to determine the specific actions attributable to each defendant. See id. ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.")

Here, plaintiff has not identified any material misrepresentation or omission of material fact by the Selby defendants. In fact, plaintiff does not allege that the Selby defendants had any substantial contact with Enemigo before the parties executed the Trinity Supplier Agreement. See SAC ¶¶ 41-51. Rather, plaintiff alleges that Bell first informed Enemigo of the Selby defendants' involvement in the days leading up to the execution of the agreement, id. ¶¶ 44-48, and that Enemigo began its brief correspondence with Selby on July 28, 2021, the day after

the Trinity Supplier Agreement was signed, id. ¶¶ 41, 49-50.[4]  All
other communications prior to the execution of the Trinity Supplier
Agreement occurred between Enemigo and the Selby defendants' co-
defendants.  See, e.g., id. ¶¶ 38-48.

Moreover, even if plaintiff could identify a misstatement or
misrepresentation made by the Selby defendants, plaintiff fails
entirely to allege that it relied on any such misstatement or
misrepresentation when deciding to enter into the Trinity Supplier
Agreement, an agreement to which neither Selby defendant was a
signatory, or, nearly two months later, when it executed the
Trinity Note and invested an additional $250,000 in Trinity.[5]
Accordingly, any argument to that effect is simply inapposite.

---

[4]    On this date, Selby wrote an email to Enemigo stating that Selby NY
managed ASM Whiskey, a brand wholly owned by Oracles, and would be taking over
Trinity's social media accounts.  Id. ¶ 49.  In response, plaintiff requested
that Selby provide examples of content created for other brands and a draft
proposal.  Id. ¶ 50.  The fact that plaintiff requested this additional
information from Selby yet still chose to execute the Trinity Supplier Agreement
suggests that this information was not crucial to plaintiff's decision to enter
into the agreement.

[5]    Plaintiff's arguments concerning reliance focus almost exclusively on the
Selby defendants' co-defendants.  Specifically, Enemigo contends that its
reliance was reasonable because "it was normal . . . to expect and demand
marketing support as part of Defendants' services as the exclusive U.S.
distributor of Enemigo's products."  Opp. at 10.  Neither Selby nor Selby NY
served as "the exclusive U.S. distributor of Enemigo's products."  Id.  Further,
plaintiff claims that it was "reasonable for Enemigo to believe that Selby NY
would market Enemigo's products" because "Bell's emails to Enemigo about
marketing were written in the language of an experienced professional in
distribution and marketing."  Id. (emphasis added).  However, plaintiff does
not allege that the Selby defendants assisted with the drafting of Bell's
emails.

We note also that plaintiff does not allege that it had any communications
with either of the Selby defendants around the time it executed the Trinity
Note, or that the Selby defendants were involved in any of the communications

Finally, plaintiff asserts that the Court can infer the fraudulent intent of the Selby defendants based on "the unusualness of Enemigo's transactions with Trinity and the Selby [d]efendants, i.e., the shifting cast of characters[,]" Opp. at 10, and because Selby and Bell were married but did not inform Enemigo of their relationship, contending that the failure to disclose this information constituted a material omission.[6]  However, plaintiff does not cite any case law to support these contentions.  Such allegations, without more, are simply insufficient to support a claim for common law fraud.  Accordingly, the Selby defendants' motion to dismiss plaintiff's fraud claim is granted.[7]

## II.  Civil Conspiracy

Plaintiff further contends that the Selby defendants and Bell engaged in a civil conspiracy to fraudulently induce plaintiff to

---

with Enemigo regarding the purported Master Distribution Agreement with Southern Glazer's Wine and Spirits.

[6]    Plaintiff refers to these as "badges of fraud," which are commonly used to assist in the identification of fraudulent conveyances.  See, e.g., Wall Street Assocs. v. Brodsky, 257 A.D.2d 526, 529 (1st Dep't 1999) ("Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the [fraudulent conveyance] pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.") (internal quotations and citation omitted)).  Where, as here, plaintiff brings only common law fraud claims, it is not necessary for the Court to examine the badges of fraud under fraudulent conveyance law.

[7]    Given our holding on this issue, we need not address the Selby defendants' arguments regarding New York's out-of-pocket rule.  See Mot. at 7-8.

invest in Trinity and rely on Selby NY as a marketing specialist for its products. Opp. at 8-13 (citing SAC ¶¶ 123-28).

As the Selby defendants correctly note, "New York does not recognize an independent tort of conspiracy." See Mot. at 13 (citing Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006)). Accordingly, in order to establish a claim of civil conspiracy under New York law, a plaintiff must establish the existence of an "underlying, actionable tort" and demonstrate that each defendant engaged in "conduct [that] was part of a common scheme." Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 671 (S.D.N.Y. 2007) (quoting World Wrestling Fed'n Entm't v. Bozell, 142 F. Supp.2d 514, 532 (S.D.N.Y. 2001) (internal quotation marks and citations omitted)). To satisfy the elements of civil conspiracy, a plaintiff must demonstrate the primary tort, as well as: "(1) an agreement between two or more parties; (2) an overt act in furtherance of that agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (5) resulting damage or injury." Id.

Here, plaintiff's civil conspiracy claim plainly fails because there is no independent, underlying tort to support its claim. Plaintiff's conspiracy claim is based on its fraud claim, which, for the reasons stated supra, Section II, must be dismissed. Further, even if Enemigo had established its fraud claim, it fails

-12-

to allege any facts that might suggest the Selby defendants agreed to participate in a conspiracy or committed any overt act, intentional or otherwise, in furtherance of that agreement. Accordingly, plaintiff's civil conspiracy claim against the Selby defendants must also be dismissed.

III. Unjust Enrichment

Next, defendant asserts that plaintiff has failed to state a claim for unjust enrichment against the Selby defendants, as plaintiff has not alleged that either Selby defendant obtained money from plaintiff. Mot. at 12-13.

To state a claim for unjust enrichment under New York law, plaintiff must allege that: "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 55 (2d Cir. 2011) (quoting Briarpatch Ltd. V. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004), cert. denied, 544 U.S. 949 (2005)). Unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Alce v. Wise Foods, Inc., No. 17 Civ. 2402 (NRB), 2018 WL 1737750,

-13-

at *11 (S.D.N.Y. Mar. 27, 2018) (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)).

The SAC is curiously devoid of specific allegations of enrichment on behalf of the Selby defendants, and plaintiff does not allege that it ever paid money directly to the Selby defendants. Further, although Enemigo claims that the Selby defendants and Bell "promised [they] would provide marketing services in connection with the Trinity Supplier Agreement[,]" Opp. at 5, neither Selby nor Selby NY was a signatory to that agreement, and neither Selby defendant received any payments from Enemigo in connection with it. Although plaintiff claims, upon information and belief, that the Selby defendants "misappropriated monies out of Enemigo's $250,000 investment in Trinity[,]" id., Enemigo cites in its opposition brief only deposition testimony and a bank statement showing that Trinity paid the Selby defendants "at least $85,083" over the course of approximately fifteen months, id. at 6.[8]  Plaintiff does not claim that Enemigo was the sole

---

[8]    Plaintiff also asserts in its opposition brief that "Bell testified that he did not know whether money from Enemigo was used to pay the Selby [d]efendants[,]" that "Trinity had no written agreement for Selby NY to provide 'services' to Trinity[,]" and that "Trinity has not produced any invoices . . . provided by the Selby [d]efendants to Trinity[.]"  Opp. at 6.  However, we note that the SAC does not contain any allegations regarding an agreement between Selby NY and Trinity or invoices between the two entities, and "it is improper to take judicial notice of [deposition] testimony for the truth of its contents[.]"  See Columbia Cas. Co. v. Neighborhood Risk Management Corp., No. 14 Civ. 48 (AJN), 2015 WL 3999192, at *4 (S.D.N.Y. June 29, 2015) (citing Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)).

source of the $85,000 paid by Trinity to the Selby defendants during this period, but instead merely speculates that, upon information and belief, the Selby defendants received a portion of the funds deposited by Enemigo into Trinity's bank account.[9]

While plaintiff correctly states that "a New York unjust enrichment claim requires no 'direct relationship' between plaintiff and defendant[,]" Opp. at 6 (quoting Myun-Uk Choi v. Tower Research Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018)), the cases it cites to support this contention each involve a traceable connection between the plaintiff's loss and the defendant's gain. See Miami Products & Chemical Co. v. Olin Corp., Nos. 19 Civ. 385 (EAW), 19 Civ. 975 (EAW), 2022 WL 3701159 (W.D.N.Y. Aug. 26, 2022) (upholding unjust enrichment claim by indirect purchaser against manufacturer involved in price-fixing)[10]; AXH Air-Coolers, LLC v. Pioneer Bancorp., Inc., No. 20 Civ. 1022 (FJS), 2021 WL 5446947 (N.D.N.Y. Nov. 22, 2021) (upholding unjust enrichment claim

---

[9]    The mere fact that the Selby defendants received funds from Trinity does not suffice to establish a claim for unjust enrichment, as plaintiff fails to sufficiently allege that the money paid by Trinity to Selby NY over the course of more than 14 months came from the one-time payment from Enemigo to Trinity in October 2021.    In fact, the bank statements provided by plaintiff in connection with its opposition briefing show only that Trinity paid approximately $80,000 to Selby NY in 31 transactions that occurred between November 4, 2021 and February 2, 2023.    See ECF No. 155-1 at 2.    Plaintiff does not allege that Enemigo served as Trinity's sole source of income during this period.

[10]    Notably, the court in this case analyzed the "direct benefit" requirements of the laws of Florida, Maine, Michigan, and North Dakota, none of which are applicable here.    Miami Products & Chemical Co., 2022 WL 3701159, at *2-3.

against defendant bank where non-party payroll processer deposited money on behalf of plaintiff and bank retained funds for its own use).

Courts are rightly "cautious about extending unjust enrichment liability beyond the principals to the transaction, and . . . when they do so, it is possible as a matter of equity to draw a clear line between the plaintiff's loss and the defendant's gain or misconduct." Marini v. Adamo, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014). To sufficiently prove that a party directly benefitted from a plaintiff's loss "requires more than a showing that the innocent party may have had access to, or some awareness of, the funds in question." Id. at 553. Rather, a plaintiff must establish "a sufficient link between the funds they lost, and a specific and direct benefit to" the party who is believed to have been unjustly enriched. Id. at 556.

Moreover, despite plaintiff's claims, the existence of a marital relationship between Bell and Selby does not suffice to "establish the specific and direct benefit necessary to support an unjust enrichment claim." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (reversing unjust enrichment verdict against wife of lawyer who embezzled funds from plaintiff); see also Marini, 12 F. Supp. 3d at 553 (a wife's "access to, or some awareness of" funds

deposited to her husband's accounts did not establish a specific and direct benefit).[11]

Where, as here, plaintiff has offered no evidence that Trinity transferred Enemigo's funds directly to the Selby defendants or that any "specific and direct benefit to" the Selby defendants resulted from the receipt of the funds paid by Enemigo, plaintiff cannot sustain a claim for unjust enrichment. Accordingly, plaintiff's claim for unjust enrichment against the Selby defendants is dismissed.

## IV. Alter Ego Liability

Lastly, the Selby defendants assert that plaintiff's claim for alter ego liability must fail, contending that New York law does not recognize a cause of action for alter ego and, even if such a claim was viable, it suffers the same infirmities as plaintiff's other claims.[12] Mot. at 15-17.

Under New York law, "piercing the corporate veil does not constitute an independent cause of action[,]" but rather a "theory

---

[11]    Plaintiff claims that both <u>Kaye</u> and <u>Marini</u> "differ[] significantly from" this case because, they assert, the Selby defendants made misrepresentations directly to Enemigo, promised to provide marketing services to plaintiff, and then failed to provide them. Opp. at 7-8. However, Enemigo fails to identify any misrepresentations the Selby defendants made directly to Enemigo, the Selby defendants were not signatories to the agreement between Enemigo and Trinity, and the Selby defendants did not receive any money directly from Enemigo.

[12]    We note that the SAC alleges alter ego liability against Bell and Flynn as executives, owners, and/or indirect owners of Jureta, Verity, Oracles, Trinity, and Selby NY, contending that the corporate veils of these corporations should be pierced, SAC ¶¶ 129-41. However, it does not allege alter ego liability against Selby as CEO of Selby NY. <u>Id.</u>

-17-

of liability[.]"  First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 871 F. Supp. 2d 103, 124 (E.D.N.Y. 2012); see also Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993) ("[A]n attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners[.]").

Nevertheless, "courts will disregard the corporate form, or . . . 'pierce the corporate veil', whenever necessary 'to prevent fraud or achieve equity'."  Id. at 140 (citation omitted).  The decision regarding whether to pierce the corporate veil "will necessarily depend on the attendant facts and equities."  Id. at 141.  "Generally, however, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) . . . such domination was used to commit a fraud or wrong against the plaintiff which result in plaintiff's injury[.]"  Id. (citations omitted).

Plaintiff has failed to allege any facts to establish that either Bell or Flynn exercised control over or dominated Selby NY. In fact, the SAC makes no reference to the factors typically considered by courts imposing liability under an alter ego theory,

such as "the absence of formalities in corporate decision making," insufficient recordkeeping, or "inadequate capitalization." Zinaman v. USTS N.Y., Inc., 798 F. Supp. 128, 132 (S.D.N.Y. 1992). Accordingly, plaintiff's alter ego claims must be dismissed, to the extent they involve the Selby defendants.[13]

## V.    Cross-claims by Hill Flynn

Finally, the Selby defendants assert that co-defendant Flynn's cross-claims against them for indemnification and contribution must also be dismissed, contending that such claims are not cognizable. See Mot. at 19-21.

Because neither Flynn nor any other co-defendant filed any opposition to the Selby defendants' motion to dismiss Flynn's cross-claims for indemnification and contribution, Flynn has abandoned his cross-claims. See Martinez v. City of New York, No. 11 Civ. 7461 (JMF), 2012 WL 6062551, at *1 (S.D.N.Y. Dec. 6, 2012) ("A court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (quoting Lipton v. Cty. Of Orange,

---

[13]    This holding has no effect on plaintiff's remaining alter ego claims against Bell and Flynn with respect to Jureta, Verity, Oracles, and Trinity.

We also note that the Selby defendants contend in their moving papers that plaintiff's contractual claims against Verity and Trinity bar plaintiff from asserting claims against the Selby defendants, as plaintiff "must be restricted to enforcing any bargain with the parties it bargained with for any remedies it bargained for." See Mot. at 15.  In light of our holdings on plaintiff's claims for fraud, conspiracy, unjust enrichment, and alter ego liability, we need not reach this argument.

N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004)); <u>Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. R & C Transit. Inc.,</u> No. 16 Civ. 02481 (ADS) (ARL), 2018 WL 794572, at *3 (E.D.N.Y. Feb. 7, 2018) (defendant "abandoned its claims for indemnification and contribution" by failing to submit a brief in opposition to a motion to dismiss).  The Selby defendants' motion to dismiss Flynn's cross-claims against them for indemnification and contribution is therefore granted.[14]

## **CONCLUSION**

For the reasons stated above, the Selby defendants' motion to dismiss plaintiff's claims against them is granted in full. Further, Flynn's cross-claims for indemnification and contribution as to the Selby defendants are also dismissed.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 149.

**SO ORDERED.**

Dated:    May 16, 2025
          New York, New York

_____
          NAOMI REICE BUCHWALD
          UNITED STATES DISTRICT JUDGE

---

[14]    As plaintiff notes, Mot. at 19, n.1, because no other co-defendants filed an opposition to the Selby defendants' motion to dismiss the crossclaims, the same holding applies to the extent any other defendants' crossclaims are intended to include the Selby defendants.  Further, Flynn's crossclaims for indemnification and contribution as to his remaining co-defendants are not impacted by this decision.